**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
CHUN JIE YIN,

                             Plaintiff,          **REPORT AND RECOMMENDATION**

        - against -

                                                CV 07-1236 (DLI) (JO)

AN J. KIM,

                             Defendant.
-----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

      Plaintiff Chun Jie Yin ("Yin") has filed a complaint alleging that defendant An J. Kim ("Kim") violated federal and state labor laws by failing to pay him the full extent of wages he was due for two weeks of construction work that he performed in the latter half of June 2005. Docket Entry ("DE") 1 (Complaint). Kim has never responded to the Complaint, and Yin accordingly seeks a default judgment. DE 5. After the Clerk noted Kim's default, DE 8, the Honorable Dora L. Irizarry, United States District Judge, entered a default judgment against Kim and referred the matter to me for a report and recommendation as to the appropriate relief. Order dated June 13, 2007. I received written submissions from Yin and also received testimony at an evidentiary hearing on August 1, 2007. DE 15 (Minute Entry). I now make my report and, for the reasons set forth below, respectfully recommend that the court grant Yin a total award in the amount of $3,027.25, comprised of $1,600.00 in unpaid regular wages; $330.54 in unpaid overtime premiums; $18.00 in "spread of hours" damages; $487.14 in liquidated damages (under state law only); and $591.57 in prejudgment interest.

I.  Background

The following factual recitation is drawn from the Complaint's uncontested allegations as well as the written materials and uncontroverted testimony that Yin submitted in support of his request for relief. Kim resides in Bayside, New York, and employed Yin as a construction day laborer at his business, the Cheong Hae Jin Restaurant. Kim was engaged in interstate commerce; had gross sales over $500,000; and enjoyed the authority to hire, fire, and set the wages of his employees. On June 14, 2005, the day before Yin began his work for Kim, the two men agreed that Yin would perform construction labor for Kim at the restaurant and would be paid $160 per 10-hour day. Yin worked subject to this agreement from June 15, 2005 through June 30, 2005. Complaint ¶¶ 7, 10-15; DE 5-3 (Declaration of [Yin's counsel] Joyce S. Huang in Support of Request to Enter Default ("Huang Dec.")) ¶ 4; DE 17 (Transcript of Evidentiary Hearing held on August 1, 2007 ("Tr.")) at 5-6.

While in Kim's employ, Yin performed general construction tasks such as repairing a defective staircase, putting up wallpaper, and refinishing the floor. Yin worked at least ten hours a day throughout his employment, and more than that on each of the final three days. Specifically, Yin worked twelve hours on June 28 and 29, 2005 and thirteen hours on June 30, 2005. On June 18, 2005, Kim paid Yin $640 for four days of work. When Yin questioned Kim regarding payment for the additional days worked, Kim informed him he would be paid upon completion of the project. When the project was completed, Yin again requested his wages. Kim ultimately wrote Yin a check on July 10, 2005, after Yin went to Kim's residence to demand payment. The check was in the amount of $1,700 – $1,600 in agreed-upon wages owed plus $100 for the delay in payment. The check bounced, causing Yin to incur a $10 fee. Complaint

2

¶¶ 16, 18-21, 23-24; Tr. 6-9; Huang Dec. ¶ 4; DE 12-2 (Declaration of [Yin's Counsel] Ralia E. Polechronis ("Polechronis Dec.")) Exs. C, D.

Yin filed the instant Complaint on March 22, 2007, and served it on Kim two days later. DE 1; DE 3. In it, he alleged causes of action under the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (the "FLSA") and various statutory protections under the New York Labor Law, as well as common-law claims for breach of contract, unjust enrichment, and quantum meruit. Kim never responded to the Complaint. On May 25, 2007, Yin moved for the entry of default. DE 5. On June 12, 2007, the Clerk entered the requested notation of default. DE 8. Judge Irizarry entered a default judgment the following day and referred the matter to me for a damages inquest. Order dated June 13, 2007.

In his request for relief, Yin sought a total award of $4,948.40. Specifically, Yin asked for $2,476.00 in compensatory damages; $1,300.05 in federal liquidated damages; $749.50 in state liquidated damages; and $423.40 in interest on the state law claims. Huang Dec. ¶ 11. Upon receiving the referral from Judge Irizarry, I directed Yin to submit any written materials in support of his request for damages by July 6, 2007, and specifically instructed him to address whether he sought to be compensated at a rate higher than the minimum wage and why he was entitled to such compensation. DE 9. Yin submitted a legal memorandum in support of his request for damages as required on July 6, 2007. DE 12 ("Memo."). I scheduled an evidentiary hearing for August 1, 2007. DE 13; *see also* DE 15 (Minute Entry). In his brief, Yin sought slightly different relief than before: a total award of $3,121.88, comprised of $1,600.00 of unpaid wages; $330.28 of unpaid overtime; $18.00 from the spread of hours; $330.28 in federal liquidated damages; $487.07 in state liquidated damages; and $356.25 in interest. Memo. at 6.

II. Discussion

    A. Applicable Law

        1. Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); Fed. R. Civ. P. 8(b)(6). However, the fact that a complaint stands unanswered does not suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to establish that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See*, *e.g.*, *Directv, Inc. v. Neznak*, 371 F. Supp. 2d 130, 132-33 (D. Conn. 2005) (denying default judgment on several claims based only on conclusory allegations which lacked a sufficient factual basis for a finding of liability); *see also Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir.1971) (default-based liability is established by "well-pleaded allegations in a complaint"), *rev'd on other grounds*, 409 U.S. 363 (1973); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir.1992) (complaint's assertion of proximate cause necessary for finding of liability must be "properly alleged"); *Levesque v. Kelly Communications, Inc.*, 1993 WL 22113, at *5 (S.D.N.Y. Jan. 25, 1993) ("the Court must be satisfied initially that the allegations of the complaint are 'well-pleaded'") (citing *Hughes*, 449 F.2d at 63).

If the defaulted Complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155 (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155. When a defendant defaults in an action brought under the FLSA, the plaintiff's recollection and estimates of hours worked are presumed to be correct. *Anderson v. Mt. Clemens Potter Co.*, 328 U.S. 680, 687-88 (1946); *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997) (citing *Mt. Clemens Potter Co.*).

    2.    <u>FLSA</u>

FLSA liability applies to "employers," a class that the statute defines broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To fall within the ambit of the FLSA's wage and overtime protections, an employee must demonstrate either that he was "engaged in commerce or in the production of goods for commerce," or that his employer was an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 203(s)(1)(A), 207(a)(1); *see Bowrin v. Catholic Guardian Soc.*, 417 F. Supp. 2d. 449, 457-58 (S.D.N.Y. 2006); *Xelo v. Mavros*, 2005 WL 2385724, at *2 (E.D.N.Y. Sept. 28, 2005). An employee must raise a claim under the FLSA within two years of an employer's non-willful violation, or within three years of a willful violation. *See* 29 U.S.C. § 255(a).

The FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the statutory minimum wage) for hours worked above 40

hours per week. 29 U.S.C. §§ 206(a), 207(a)(1). Further, an employer must "make, keep, and preserve" records of employee wages and employment conditions. 29 U.S.C. § 211(c). If an employer fails to do so, the plaintiff may meet his burden with respect to proving hours and wages by showing "'sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred.'" *Reich*, 121 F.3d at 66 (quoting *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1296-97 (3d Cir. 1991)). As a result, in the absence of the required records, a plaintiff's recollection can suffice to establish the level of his statutory recovery.

In calculating overtime pay owed under the FLSA, the court must first determine the employee's regular rate of pay for the relevant periods. 29 U.S.C. § 207(a)(1). The regular rate of pay is the hourly rate paid to the employee for a typical week. *See* 29 U.S.C. § 207(e); *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). That rate is calculated by dividing weekly compensation by the number of hours for which that compensation is intended. 29 C.F.R. § 778.112; *see also Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 338 (S.D.N.Y. 2005) (citing *Moon v. Kwon*, 248 F. Supp. 2d 201, 230 (S.D.N.Y. 2002)). This method of calculation has strange consequences; it gives those workers who work longer hours a lower regular rate. Courts nevertheless are constrained to follow the FLSA regulations. *See Dufrene v. Browning-Ferris, Inc.*, 207 F.3d 264, 267-68 (5th Cir. 2000), *cert. denied*, 531 U.S. 825 (2000); *see also Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580 (1942), *superseded by statue on other grounds as stated in Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985) and *Walling v. A.H. Belo Corp.*, 316 U.S. 624 (1942). Finally, the FLSA provides for liquidated damages in the full amount owed for minimum wage and overtime violations. 29 U.S.C. § 216(b).

3. New York Labor Law

New York's Labor Law mirrors the FLSA in most but not all respects. New York similarly defines an employer as a "person employing any" employee, N.Y. Lab. L. § 2(6), and requires employers to pay their manual workers "weekly and not later than seven calendar days after the end of the week in which the wages are earned[.]" N.Y. Lab. L. § 191(1)(a)(i). Unlike the FLSA, however, the state statute does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of annual sales.

Another difference between the two statutory regimes is that with respect to damages, a plaintiff who prevails on a cause of action under the state law is entitled to the full amount of wages owed, not just the statutory minimum wage for the hours worked. Like the FLSA, however, New York mandates that employers provide time-and-a-half compensation for their employees' work hours that exceed 40 hours per week. N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2. New York also adopts the same methods of calculation as those used under the FLSA, *id.*, and it likewise includes a liquidated damages provision, albeit one that differs from its federal counterpart: the state law allows a plaintiff to recover an additional amount equal to one-quarter of the total wages due if the non-payment was "willful," meaning that the employer knowingly neglected the obligation to pay. N.Y. Lab. L. § 198(1-a); *see Yang*, 427 F. Supp. 2d at 340; *Moon*, 248 F. Supp. 2d at 231; *Ayres v. 127 Rest. Corp.*, 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998). Finally, the state statute, unlike the FLSA, provides a form of relief called the "spread of hours," consisting of an extra hour's worth of pay (at the minimum wage, which was $6.00 per hour in 2005) for each day on which an employee works ten or more hours. N.Y. Lab. L. § 652.

B.      Liability

With one important caveat discussed below, the uncontroverted allegations of the Complaint suffice to establish that Kim was an employer governed by the FLSA who failed to pay his employee Yin all of the wages to which Yin was entitled for the work he performed in June 2005. Complaint ¶¶ 9, 11-13, 18-27. The record further establishes that Kim willfully violated his obligations to pay wages and overtime under New York's Labor Law during the same time period. The fact that Kim wrote Yin a check for $1,700 demonstrates Kim's knowledge that he owed Yin for past employment. By not compensating Yin for that amount, Kim "knowingly" disregarded his obligation to pay Yin's wages, satisfying New York's definition of a willful violation.[1]

I note that there is one technical deficiency in the record that arguably precludes a finding of liability on the FLSA claims. As noted above, to demonstrate eligibility for protection under the FLSA (but not under state law), Yin must demonstrate either that he was himself "engaged in commerce or in the production of goods for commerce" or that his employer Kim was an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 203(s)(1)(A), 207(a)(1); see Bowrin, 417 F. Supp. 2d. at 457-58; Xelo, 2005 WL 2385724, at *2.

Yin has not established that he was "engaged in commerce or in the production of goods for commerce" within the meaning of the statute. The FLSA defines "commerce" as "trade,

---

[1] Because Yin filed suit less than two years after he worked for Kim, the court need not consider whether Kim's FLSA violations were willful. Similarly, because Yin does not seek separate relief for his common law claims of breach of contract, unjust enrichment, and quantum meruit, see Huang Dec. ¶ 11, the court need not address the issue of Kim's liability on those claims if it adopts my recommendation as to relief on the wage claims.

commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Yin has made the uncontroverted allegation that he "handled, sold, or otherwise worked on goods or materials that *had been moved in or produced for interstate commerce[,]*" Complaint ¶ 8 (emphasis added), but that does not establish that he was himself "engaged in" anything that the statute defines as interstate "commerce." Nor does that allegation, or anything else in the record, establish that Yin was engaged in "the production of goods for commerce" – to the contrary, Yin alleges only that he provided construction services, and not that he produced goods. *See* Complaint ¶ 16 ("Yin performed various general construction tasks ... including repairing a defective staircase, putting up wallpaper, and refinishing the restaurant floor"); Tr. 5 (describing essentially similar services).

Yin must therefore establish that Kim is an "enterprise engaged in commerce" within the statute's meaning. To do that, he must demonstrated that Kim, in his capacity as an employer,

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose *annual* gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]

29 U.S.C. § 203(s)(1)(A) (emphasis added).[2] Kim's uncontroverted allegation about handling and working on goods that had moved in interstate commerce, Complaint ¶ 8, satisfies the first of the quoted elements. But his allegation that Kim "has gross sales of over $500,000.00" without specifying any time period for such sales, Complaint ¶ 12, on its face does not.

---

[2] The statute provides for other ways to demonstrate that an employer is an "enterprise engaged in commerce" that are plainly inapposite to this case. *See id*. § 203(s)(1)(B)-(C).

The court could therefore determine that Yin has failed to establish liability on his federal law claims, despite Kim's default, and decline to award any damages on them. I do not recommend that result. I have no doubt that the allegation of "gross sales of over $500,000.00" was included in the Complaint based on Yin's counsel's understanding of the relevant statutory requirement and based on counsel's good faith belief, after reasonable inquiry, that the facts of the case and the applicable law supported the inclusion of the FLSA claims. *See* Fed. R. Civ. P. 11(b)(2)-(3). From that premise I conclude that the Complaint's failure to allege that the specified sales were made annually was nothing more than a negligent omission by counsel.[3]

---

[3] It would not be the only one in this case. After I ordered Yin "to submit any written materials in support of his request for damages" by a certain deadline, his counsel provided no supporting evidence, but only a memorandum of law that explained why the Complaint, supplemented by Yin's own testimonial recollection of the number of hours he worked, would suffice. *See* Memo. at 3-6. I assumed that counsel did so because Kim had defaulted and therefore had not provided (and apparently had not kept) the employment records he was required to maintain, and because Yin himself had no documentary support for his recollection. As it happened, Yin did have such documentary support. After his counsel completed her examination of Yin at the inquest, I asked the plaintiff how he had managed to have such a precise recollection of the days and hours he had worked. He answered that he had "made a record." Tr. 10. The revelation was apparently as much a surprise to counsel as it was to me. After all of the evidence was in the record at the inquest, I remarked to counsel that "I was somewhat surprised based on the argument that we should rely on recollection in the absence of records ... to hear there's actually a record that hasn't been produced[.]" Tr. 12. Counsel responded that "this was the first time we discussed that there was an actual record that he had written down" and then reported that she had "just review[ed]" her client's "intake sheet" from a workers' rights organization that had previously been assisting him, and had just noticed a photocopy of the record her client had just described. *Id*.

Yin's attorneys in this matter donated a significant amount of time and made substantial efforts on Yin's behalf on a *pro bono* basis. In doing so they acted admirably and upheld the finest tradition of our profession. Nevertheless, it should go without saying that any attorney who makes the salutary decision to undertake such a representation owes her client the same duty of zealous advocacy that she owes to a paying client. Between the failure to review the case file carefully to find important evidence and the failure to be meticulous in crafting Yin's complaint, counsel's lapses could have prejudiced Yin's substantive rights. Because I am satisfied that it is fully consistent with the law to do so, I recommend that the court enter an award that vindicates those rights rather than one that gives Kim a windfall on the basis of counsel's inattention.

I therefore respectfully recommend that the court find Kim liable on the FLSA claim and proceed to a consideration of damages. However, in the event that the court decides that the omission in the complaint precludes a finding of liability on the FLSA claim, I nevertheless recommend the same overall award of damages. Each component of the award I recommend under the FLSA is also available, in the same amount or more, for Kim's violations of New York State's labor law. Because Yin's pleading mistake has no effect on the latter state law claims, a ruling that Yin has failed to establish the FLSA claim should have no effect on the outcome.

### C. Damages

In support of his request for relief, Yin submitted, in advance of the evidentiary hearing, two affidavits from his counsel; a check dated July 10, 2005, in the amount of $1,700 payable to Chun Jie Yin; and "debit advice" slips from First American International Bank to Chun Jie Yin, dated July 14, 2005 showing the return of a deposited check in the amount of $1,700 and a $10 charge for the check's return. At the hearing, Yin presented his own testimony, which I found to be credible, as well as a copy of a note, Plaintiff's Exhibit 2, that Yin claimed to have written at the time of his employment and that he characterized as reflecting the hours he worked for Kim. I found the note to be reliable support for Yin's description of his work for Kim. It is on the basis of this evidentiary record that I submit the following analysis of Yin's damages.

#### 1. Unpaid Regular Wages

Kim is liable to Yin for his unpaid wages under both the FLSA, which requires payment of minimum wages, and the corresponding New York state law, which requires payment of all unpaid wages. Yin specifically seeks payment for the full amount of his unpaid wages under the state statute. Yin worked for Kim for a total of fourteen days, ten of which were uncompensated.

Tr. 8; Huang Dec. ¶ 4. Yin's testimony on this subject as well as the check from Kim to Yin corroborates the amount owed. At the agreed upon wage of $160 per day, Kim owes Yin $1,600 for the ten days of uncompensated work.

2. <u>Unpaid Overtime Wages</u>

Similarly, both the state and federal statutes require Kim to pay Yin a 50 percent premium for his overtime hours – that is, the hours in excess of 40 that he worked in each "work week." A work week is defined by the FLSA as "a fixed and regularly recurring period of 168 hours" which "need not coincide with the calendar week but may begin on any day and at any hour of the day." 29 C.F.R. § 778.105 (2007). Yin began work on Wednesday June 15, 2005. The 16-day period in which he performed his work for Kim thus fell into three work weeks within the meaning of the law: June 15-21, during which Yin worked 60 hours; June 22-28, during which he worked 62 hours;[4] and June 29-30, during which he worked 25 hours. Having worked more than 40 hours in each of the first two of those work weeks, Yin is entitled to overtime wages for those weeks.

To determine the amount of unpaid overtime wages that Yin earned, I must first calculate his "regular rate" of pay. According to the applicable regulation, that rate is determined by "totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked." 29 C.F.R. § 778.112. That seemingly clear explanation is arguably susceptible to multiple interpretations under the facts of this case. The numerator – that is, the

---

[4] At the hearing, Yin explained that although he did not usually work on Sunday, he did work on Sunday, June 26th. Tr. at 16. While his handwritten note, Exhibit 2, corroborates his testimony, Yin makes no mention of having worked this day in any of his written submissions. Because he seeks no specific relief for having worked that day, I recommend limiting his recovery to the hours described in the Complaint and his memorandum of law.

total of "all the sums received at ... day rates" – could be characterized as $1,920 for the two weeks at issue, as Yin advocates (12 days at the agreed-upon rate of $160 per day), or as the much lower amount of money ($640) that he was actually able to obtain from Kim.[5]  I conclude that the higher amount is appropriate.  Not only is that the day rate to which Kim agreed, but it also reflects the total of "all the sums [that Yin] received" from Kim – even though, to be sure, a significant portion of that sum was in the form of a check that was later returned for insufficient funds.[6]  It would entirely defeat the statute's remedial purpose, and create a perverse incentive for employers, to allow Kim to reduce the applicable wage by first withholding payment and then giving Yin an invalid check.

The denominator under the regulatory formula – that is, the total hours actually worked – is 122 for the two weeks for which he is owed overtime wages:  60 hours in the first work week and 62 in the second.  As a result, I calculate Yin's "regular rate" of pay as $1,920 divided by 122 hours, or $15.74 per hour.  *See Kornexl v. Bailey*, 2006 WL 1517143, *2 (M.D. Fla. 2006) (employing similar methodology); *Yang*, 427 F. Supp. 2d at 338 (same).  The 50 percent overtime premium is thus $7.87 per hour; applying that rate to the 42 hours of overtime that Yin worked (20 in the first work week and 22 in the second) produces a result of $330.54.

---

[5]  Adopting the lower number would require further adjustments.  Because that lower number would effectively provide a pay rate of zero for the days on which Yin was paid nothing, the statutory rate would revert to the minimum wage.  N.Y. Lab. L. § 652; 29 U.S.C. § 206(a)(1) (2005) (current version at 29 U.S.C. § 206(a)(1) (2007)); *see Herman v. Hector I. Nieves Transport, Inc.*, 91 F. Supp. 2d 435, 442 (D.P.R. 2000).

[6]  To the extent the payment made by check is relevant, it is only $1,600 – rather than the full $1,700 amount on the face of the check – that applies for purposes of the regulatory formula.  As the record makes clear, $100 of the amount paid by check was intended not as a wage but as compensation for the delay in payment.

### 3. "Spread of Hours" Damages

The "spread of hours" provision of New York law entitles Yin to one additional hour of pay at the minimum hourly wage for each day he worked over ten hours. Yin testified to working over ten hours on three days: June 28, 29, and 30, 2005. Tr. at 6-7. For those three days Kim owes Yin $6 per day (equal to the minimum wage for one hour of work in 2005), for a total of $18.00.

### 4. Liquidated Damages

The FLSA entitles Yin to liquidated damages in the full amount of overtime owed, which is $330.54. Although the court has the discretion to deny such a penalty, I see no reason to do so in the instant action where nothing suggests that Kim's FLSA violations were the result of a good faith mistake. In this district, "[d]ouble damages are the norm, single damages the exception." *Reich*, 121 F.3d at 71 (citations omitted). Similarly, New York provides for liquidated damages in the amount of 25 percent of the total wages owed when the employer's failure to pay wages was "willful." As explained above, I find Kim's conduct willful within the meaning of the New York statute. As a result, Yin is entitled to liquidated damages of $487.14 under the state statute (one quarter of the total of $1,600 in wages, $330.54 in overtime, and $18 in spread of hours).

While each statute provides a separate form of liquidated damages, I recommend awarding only one of them. Allowing Yin to recover both forms of statutory "liquidated damages" would not merely double his compensation; it would essentially triple it. Yin's counsel argues that the rationale for each statute's liquidated damages provision is sufficiently different to allow recovery under both. To be sure, while the New York provision is available only for "willful" violations – thereby suggesting a punitive rather than compensatory goal, the FLSA

14

characterizes its liquidated damages provision as "compensatory rather than punitive in nature." *Reich*, 121 F.3d at 71. But that distinction is not persuasive. As Yin's counsel argues with respect to the federal law, "The compensatory nature of these damages is underlined by the burden of proof, which automatically awards these damages to the plaintiff/employee unless the defendant/employer makes an affirmative showing of good faith and reasonableness." Memo. at 14. Such argument undermines Yin's position: I see no meaningful difference between the state statute's requirement of willfulness and the federal statute's prohibition on liquidated damages upon the defendant's showing of good faith. Each regime imposes a higher obligation to pay on a defendant who acts with a culpable state of mind, regardless of whether the defendant's conduct or intent has increased the harm to the plaintiff. That would appear to be the definition of a punitive form of damages, but I defer to the more authoritative case law that says otherwise. Nevertheless, to the extent the "liquidated damages" available under the FLSA can properly be characterized as compensation, it is apparent that the "liquidated damages" available under the state statute compensates the exact same harm – namely, the harm caused by the defendant's culpable state of mind. As a result, it would be improper to award Yin both forms of compensation for the same harm. I therefore recommend that the court award Yin $487.14 in liquidated damages under the New York statute, and no liquidated damages on the FLSA claim.

      5.     Prejudgment Interest

New York law provides for an award of prejudgment interest in the circumstances of this case. *See* N.Y. C.P.L.R. § 5001. Awarding prejudgment interest does not overlap with the purposes of liquidated damages, as the former is designed to "compensate a plaintiff for the loss of use of money" while awaiting judgment. *Reilly*, 181 F.3d at 265 (citing *Chandler v.*

*Bombardier Capital Inc.*, 44 F.3d 80, 83 (2d. Cir. 1994)). I therefore conclude it is appropriate to award prejudgment interest here.

The statutory rate of interest is nine percent per year. N.Y. C.P.L.R. § 5004. Yin's counsel reasonably proposes that interest be calculated from the mid-point of the period in which Kim failed to make payments, or June 23, 2005. Applying a 9 percent annual interest rate to a corpus of $2,435.68 (the sum of the damages awards recommended above) for the period from June 23, 2005 until today (two years and 255 days) produces an interest award of $591.57. I recommend an award of that amount.

      6.      Attorneys' Fees And Costs

Yin has explicitly waived any right he may have to seek reimbursement of attorneys' fees and other litigation costs. Accordingly, the court need not consider the matter.

III.    Recommendation

For the reasons set forth above, I respectfully recommend that the court enter an order awarding Yin judgment in the amount of $3,027.25, comprised of $1,600.00 in unpaid regular wages; $330.54 in unpaid overtime premiums; $18.00 in "spread of hours" damages; $487.14 in liquidated damages (under state law only); and $591.57 in prejudgment interest.

IV.    Objections

I direct plaintiff Yin to serve a copy of this Report and Recommendation on defendant Kim by certified mail, and to file proof of service with the court no later than March 11, 2008. Any objections to this Report and Recommendation must be filed no later than March 28, 2008. Failure to file objections within that period, absent the entry of an order extending that deadline pursuant to Federal Rule of Civil Procedure 6(b)(1), will waive the right to appeal the district

court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchs. Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Brooklyn, New York
　　　 March 7, 2008

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge
